McLENNAN, P. J. (dissenting).    I dissent, upon the ground that the finding of the referee that Murray & Jones were the agents of the defendant was amply supported by the evidence; upon the further ground that it would be against public policy to hold that a general insurance agent, who is made acquainted with all the facts in an application for insurance, may go to another insurance agent, when their usual course of business permits such dealing, and effect the desired insurance without disclosing the information received by him from the applicant for insurance, and thus prevent a valid policy of insurance being issued.   It is well known that a person or corporation having property to be insured usually intrusts such insurance to an agent or broker, who represents a number of insurance companies.    If the amount of insurance is greater than the companies represented by such agent can carry, the desired amount is effected through other agencies, representing other insurance companies.    This system of placing insurance is almost universal, but it has been expressly found by the referee upon competent evidence that it was the practice and system adopted by the defendant insurance company in the city of Hornellsville.   We think, under the circumstances, that the information received by the agent of the Niagara Fire Insurance Company was the information received by the defendant, and that it was bound thereby.

It therefore follows that the judgment should be affirmed, with costs.

(112 App. Div. 555)

## BROOKS v. INTERNATIONAL RY. CO.

(Supreme Court, Appellate Division, Fourth Department.   May 2, 1906.)

1. APPEAL—PRESUMPTIONS—APPEAL FROM NONSUIT.
   Where plaintiff suffers an involuntary nonsuit, he is entitled on appeal to have all questions of fact involved in the evidence and all inferences which may be legitimately drawn therefrom construed most favorably to him.

   [Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Appeal and Error, § 3748.]

2. STREET RAILROADS—COLLISION WITH CYCLIST—CONTRIBUTORY NEGLIGENCE.
   Where a person riding a bicycle upon the street in the usual way reaches a point 20 feet from a street car track, and sees a car approaching 150 feet distant, his failure to stop and wait until the car passed is not contributory negligence as a matter of law.

   [Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Street Railroads, §§ 257, 214.]

3. SAME—QUESTION FOR JURY.
   In an action against a street railway company for death caused by a collision between a car and cyclist at a street crossing, evidence held to require submission to the jury of the question whether deceased was guilty of contributory negligence.

Appeal from Trial Term, Erie County.

Action by James F. Brooks, as administrator of Sarah A. Brooks, deceased, against the International Railway Company.   From a judgment for defendant, and from an order denying a motion for a new trial, plaintiff appeals.   Reversed and remanded.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, and KRUSE, JJ.

Eugene M. Bartlett, for appellant.
Simon Fleischmann, for respondent.

McLENNAN, P. J. The facts are not in dispute, and the plaintiff, having been nonsuited, is entitled to have all questions of fact involved in the evidence and all inferences which may be legitimately drawn therefrom construed most favorably to him. The defendant, a domestic corporation, at the time of the accident complained of, was engaged in operating a double-track street surface railroad, extending along the center of Jefferson street in the city of Buffalo, N. Y., which runs north and south, and is crossed at right angles by Northland avenue. Both of said streets are 30 feet in width between the curbs. At about 9 o'clock on the evening of the 9th day of May, 1903, the plaintiff's intestate, who was riding a bicycle at a moderate rate of speed going easterly along Northland avenue, attempted to cross the tracks of defendant's railroad, and when upon the last or most easterly rail of defendant's second track was struck by a car approaching from the south and so injured as that death resulted. The evidence quite conclusively shows that the defendant was guilty of negligence which caused the accident, at least it was of such a character as to make it a question of fact for the jury, because such evidence tends to show that the car as it approached the crossing was going at a very high rate of speed, 20 miles an hour; that it was not under control as it approached Northland avenue; and that it gave no signal or warning of its approach. Indeed, the learned trial justice apparently assumed, in granting defendant's motion for a nonsuit, that the evidence was sufficient to raise a question of fact as to defendant's negligence; but the motion was granted solely upon the ground that the plaintiff failed to establish affirmatively that his intestate was free from contributory negligence.

Notwithstanding plaintiff's intestate is dead, and therefore cannot state what precautions she took to avoid the accident, and that she did those things which a person in the exercise of ordinary care and prudence would have done under like circumstances, we will assume that the plaintiff cannot recover, unless it may be reasonably inferred from the facts proven that the deceased did exercise such care and prudence, and that the burden of affirmatively establishing such proposition rests upon the plaintiff. The evidence tends to show that upon the night in question plaintiff's intestate was upon her bicycle going easterly along Northland avenue. The deceased was first seen riding at a moderate rate of speed in the center of Northland avenue near the corner of a drug store, the east wall of which is 24½ feet west of the westerly curb of Jefferson street, and the north wall 17½ feet south of the southerly curb of Northland avenue. She was on a line 2 or 3 feet east of the drug store and was headed east, going straight across the tracks. At that time the car which struck her was 150 feet from the crossing and was going at the rate of 20 miles an hour. She went across the first track, but before, or just as, she reached the track upon which the car was coming, she turned her wheel to the north, going

to the farther side of the street, and tried to cross at that point, and was struck by the car at the north side of Northland avenue just as the rear wheel of her bicycle was leaving the easterly rail of the defendant's most easterly track.   When she turned her wheel to the north the car had already reached the southerly line of Northland avenue.

From these few and simple facts we think it would have been proper for the jury to have inferred that in so attempting to cross she saw the car approaching, but that she assumed, as she had a right to do, that the car would approach the crossing at a proper rate of speed, and under such control as would enable it to be stopped before coming into collision with her, she being rightfully upon the crossing; that, observing the defendant failed in the discharge of its duty in that regard, and being then about to go upon the track upon which the car was approaching, and being unable to stop instantly, she turned her wheel to the north, went diagonally across the tracks to the farther side of the street, and was struck just as the rear wheel of her bicycle was leaving the easterly rail of defendant's most easterly track.   Reasonable care and prudence could not have been more clearly proven than by the facts and circumstances disclosed by the record if the deceased had been living and testified:

"When I got to a point within 20 feet of defendant's tracks, I saw its car approaching the crossing, 150 feet away.   I supposed that I had ample time to cross in safety, as I would have had if the defendant had obeyed the duty imposed upon it by law, which I assumed it would do.   When I got across the first track I discovered that such duty was not being performed by the defendant, and I was in a place of danger.   I could not stop my wheel or turn back, and sought to avoid a collision by turning to the north to the end that I might have greater space in which to make the crossing."

If plaintiff's intestate had given such testimony, we think it must be conceded that the question of her contributory negligence would have been for the jury, and, as suggested, we think it was permissible for the jury to have drawn precisely those inferences as to the acts and conduct of the plaintiff from the facts and circumstances disclosed.   It is not the law that a person passing along a city street upon a bicycle in the usual way, when he reaches a point 20 feet from a street car track upon an intersecting street, and sees a car approaching 150 feet distant from such crossing, must stop and wait until such car has passed before he attempts to proceed, in order to be relieved from the imputation of negligence in case a collision occurs.   The practical result of such a rule would be to declare that a railroad company has a paramount right of way at such crossing.   The contrary has been repeatedly held.

In Zimmerman v. Union Ry. Co., 3 App. Div. 219, 38 N. Y. Supp. 362, the court said:

"The wagon was being driven across the railroad, not within its tracks, The defendant's car had no paramount right of way at the crossing.   O'Neill v. Dry Dock, etc., R. R. Co., 129 N. Y. 125, 29 N. E. 84.   The distance from the car to the crossing, at the time Madden sought to cross, was such as to enable the wagon to pass safely, if the defendant's car had been properly managed, and this Madden and the deceased had a right to expect.   The wagon was prior in time at the crossing, and therefore prior in right.   The driver was not bound to get out of the way of the car, nor can it be said to be negligence on his part that he proceeded to cross at a walk."

In the case of Lawson v. Met. St. Ry. Co., 40 App. Div. 308–312, 57 N. Y. Supp. 1000, it was said:

"When one attempts to cross the track of a street car, and has approached the track at such a distance from an approaching car that he has reasonable ground to suppose that he will be able to cross the track, it is the duty of the street car driver to give him a reasonable opportunity to cross, and if, for that purpose it is necessary for him to check the speed of his car, or even stop the car entirely for a short space, it is his duty to do it, and the person crossing the track has the right, without being charged with contributory negligence, to assume that that duty will be performed."

The rule is very concisely stated in Dunican v. Union Ry. Co., 39 App. Div. 497–500, 57 N. Y. Supp. 329, as follows:

"He [the plaintiff] had the right to cross the track, even though the car was approaching, and even though the fact of his crossing required the car to slacken its speed (Kennedy v. Third Ave. R. R. Co., 31 App. Div. 30, 52 N. Y. Supp. 551); and whether he had sufficient opportunity to observe the approach of the car, or used due diligence in his effort to avoid it after he became aware of its situation, was clearly a matter for the jury to determine."

See, also, Johnson v. Rochester Ry. Co., 61 App. Div. 12, 70 N. Y. Supp. 113; Smith v. Met. Ry. Co., 7 App. Div. 253, 40 N. Y. Supp. 148; Brozek v. Steinway Ry. Co., 10 App. Div. 360, 41 N. Y. Supp. 1017.

Many other cases might be cited to the same effect, all of which hold that it is not negligence as matter of law for a pedestrian traveling upon a public street, a person driving a vehicle, or riding upon a bicycle, to attempt to cross a street surface railroad track when a car is approaching 150 feet away; that such traveler has the right to assume that the car so approaching is going at a proper rate of speed, is under control, and will slow down or stop, if necessary, in order to avoid colliding with such traveler. Neither can it be said that such traveler is as matter of law guilty of negligence, because, when he discovers that such car is not going to slow down or stop, he seeks to avoid collision by going farther from it and attempts to pass around it, although as a result an accident occurs.

Upon the evidence the jury would have been justified in inferring from the facts and circumstances proven that plaintiff's intestate did just that, and nothing more, and therefore the question of her contributory negligence was for the jury. It follows that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.